# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

WILLIAM L. RITTER, JR., )
)
        Plaintiff, )
v. ) Case No. CIV-15-338-JHP-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

The claimant William L. Ritter, Jr., requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 22, 1969, and was forty-four years old at the time of the administrative hearing (Tr. 50). He completed the ninth grade, and has worked as a heavy equipment operator (Tr. 40, 170). The claimant alleges he has been unable to work since December 31, 2011, due to heart problems, high blood pressure, a hernia, and back trouble (Tr. 170).

## Procedural History

On October 13, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Doug Gabbard, II, held an administrative hearing and determined the claimant was not disabled in a written decision dated April 4, 2014 (Tr. 30-41). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could perform semi-skilled work (work which requires some detailed skills but does not require sustained

focus or doing more complex work duties, preferably work which involves repetitive tasks that do not require alteration in routine) where interpersonal contact with supervisors and co-workers is incidental to the work performed, such as assembly work, and that he could have only occasional contact with the general public. Additionally, the ALJ found that the claimant would need to have an avoidance of concentrated exposure to extreme cold and heat (Tr. 35). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, security guard and gate guard (Tr. 40-41).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess his credibility, (ii) by failing to properly include limitations in his RFC, and (iii) by failing to fully develop the record.[2] The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of gout, affective disorder, anxiety, and substance addiction disorder (Tr. 33). The relevant medical evidence reveals that the claimant received treatment at Rubin White Health Clinic, and on March 27, 2012, he approached Dr. William Hayes for disability recommendation (Tr. 270). Notes from Dr. Hayes indicate that policy did not allow for formal disability assessments, but noted that the claimant was "certainly better off to

---

[2] Under Local Civ. R. 7.1(c), "[b]riefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings and subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited." The claimant's brief fails to comply with this rule, but the undersigned Magistrate Judge nevertheless elects to address the merits of the claimant's contentions.

avoid work in physically strenuous outdoor environments due [to] his associated risks" (Tr. 271). Further treatment notes indicate that the claimant's diagnoses included: alcoholism, polycythemia vera, hypertension, mood disorder (Tr. 400). In 2013, the claimant stopped his antidepressant medication Celexa, stating that he did not feel he needed it anymore (Tr. 459). On March 15, 2013 a stress echocardiography test was negative for ischemia (Tr. 465). Treatment notes from the behavioral health center, which were largely suppressed for confidentiality, indicated that he was assessed with a mood disorder secondary to alcohol dependence (Tr. 554).

Consultative examiner Theresa Horton, Ph.D., conducted a mental status examination of the claimant and concluded that his Axis I diagnosis was mood disorder, NOS, with anxious and depressed features (Tr. 319). She found the claimant capable of understanding, remembering, and managing most simple and complex instructions and tasks with adequate social/emotional adjustment into occupational/social settings, but noted he also had complaints of serious health problems that would be addressed separately by other physicians (Tr. 319).

A state reviewing physician found that the claimant could perform light work, but that he needed to avoid temperature extremes (Tr. 301, 304).

At the administrative hearing, the claimant testified that he described his past work as a heavy equipment operator, and says that he quit working because his doctor told him he would not live past the age of 55 if he kept going (Tr. 50-53). He stated that his blood pressure was uncontrolled and he had heart problems, but that he had too much time on his hands when he stopped working and became depressed (Tr. 53-54). He also testified

that activity makes his gout worse, and that he needs to change positions from sitting to standing at least every hour (Tr. 55, 58). He stated that when his gout flares up, he has to elevate his leg and stay off of it (Tr. 63). He further testified that his shoulder was not as strong as it used to be, and that he wakes up with a headache every morning (Tr. 64-65).

In his written opinion, the ALJ summarized the claimant's testimony as well as most of the medical evidence in the record. At step four, the ALJ found that the claimant's allegations were not supported to the extent alleged, noting that the objective findings in the record did not support the claimant's allegations of disabling symptoms, nor did his daily activities (Tr. 35-37). The ALJ noted that the claimant could care for his personal hygiene, clean, prepare simple meals, shop, drive, and do some yard work, which were all consistent with sitting and standing; and further noted that he played video games, which suggested attention and concentration sufficient to perform semi-skilled work (Tr. 37). Moreover, the ALJ noted that the claimant's complaints with regard to his gout were not reflected in the medical evidence (Tr. 37).

The claimant first contends that the ALJ erred in analyzing his credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v.*

*Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 46). Use of boilerplate language is generally disfavored, but this was not the sum total of the ALJ's analysis of the claimants' credibility. *See, e. g., Moua v. Colvin*, 541 Fed. Appx. 794, 800 (10th Cir. 2013) ("[T]he use of standard boilerplate language will not suffice, but only in the absence of a more thorough analysis."), *quoting Hardman*, 365 F3d at 697 and *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, as described above (Tr. 35-39). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*.

The claimant nevertheless argues, without pointing to any evidence in the record, that the ALJ improperly discounted the claimant's complaints of pain. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen*, 862 F.2d 802, 807-808 (10th Cir. 1988). But here there is no indication that the ALJ misread the claimant's medical

evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment, again contending that the RFC does not account for the claimant's pain and that it does not contain sufficient restrictions. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. In this case, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

In his opinion, the ALJ summarized the records from the claimant's various treating providers, as well as the consultative physician opinions and state reviewing physician opinions. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). It is

true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). But here, the ALJ's treatment of the medical evidence in this case meets these standards. The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform light work. When all the evidence is taken into account, the conclusion that the claimant could perform light work with the above-mentioned limitations is thus supported by substantial evidence.

Finally, the claimant contends that the ALJ failed to develop the record because he "clearly has several physical and mental impairments that were not treated or sufficiently addressed." *See* Docket No. 18, p. 17. He nevertheless fails to point the Court to what these impairments were or how they affected the claimant so as to result in "severely limiting exertional and non-exertional impairments." It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate

burden of proving that []he is disabled under the regulations." *Henrie*, 13 F.3d at 361 [citations omitted]. Here, the claimant has not met this burden.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**